### J. M. RAPER v. J. J. TERRELL, COMMISSIONER, ET AL.

#### No. 1617.   Decided January 9, 1907.

**1.—School Land—Absolute Lease—District—Lands Included.**

By the words "tract of land" lying partly inside and partly outside of the absolute lease district, which, by the Act of April 19, 1901 (Laws 27th Leg., p. 295), was to be treated as outside it for the purpose of sale, was meant only such lands as were actually surveyed at the time the law was to take effect. (P. 288.)

**·2.—Same.**

The fact that a section of land lying wholly within the counties included in the absolute lease district, by the law of April 19, 1901, was unsurveyed at that time, but was then included in the boundaries of a lease of some 150,000 acres, extending outside the county and absolute lease territory, did not, when it was afterwards surveyed and placed on the market, have the effect to take such surveyed section out of the absolute lease district.   (Pp. 287–289.)

Original petition to the Supreme Court for writ of mandamus to the Commissioner of the General Land Office.

*E. Cartledge* and *N. A. Rector,* for relator.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent Terrell.

*L. H. Brightman* and *Cowan, Burney & Goree,* for respondent McElroy.

GAINES, CHIEF JUSTICE.—This suit was brought by the relator to compel the respondent, Terrell, as Commissioner of the General Land Office, to award him four sections of school land which he had made applications to purchase. The Commissioner refused to accept his applications on the ground that the lands were under lease, and were in the absolute lease district. The holders of the lease were made parties defendants.

The lands lie partly in Terry County and partly in Yoakum County. They were, on the 13th day of January, 1902, leased to one Ed Meyer; and the corespondents have succeeded to his rights by a regular chain of transfer. The applications to purchase were made on the 28th of July, 1906, and were, on the 18th day of August, rejected by the Commissioner.

The decision of the case depends upon the determination of the question whether the lands lie within the absolute lease district. Terry and Yoakum are two of the counties named as constituting such district; but the controversy grows out of the construction of the following language, found in the section of the Act of 1901 which defines the area in which leased lands should be exempt from sale during the existence of the lease: "All tracts of land lying partly inside and partly outside of the absolute lease district shall be considered for the purpose of sale and lease as being wholly without said district. And lands situated in the absolute lease district, which may be leased, shall not be sold during the term of the lease, except as provided herein." The sections in con-

troversy lie within a large body of land some sixty miles in length, and of a width varying from one to several miles, and comprising some 150,000 acres. A portion of this body lies in Yoakum and Terry Counties, and a portion north of their north boundary lines, and therefore outside of the absolute lease district. After the lease to Meyer this large area was surveyed into sections for the purpose of sale for the benefit of the school fund. Four of the sections so surveyed are the lands in controversy, two of which lie wholly in Yoakum and two wholly in Terry County. Now, if by the words, "all tracts of land," in the provision quoted, the Legislature meant to include every tract of land without reference to its size, and without reference to its being on the market for sale, then the sections in controversy were without the absolute lease district, and were subject to sale notwithstanding the Meyer lease. If such bodies of land were not meant by the word "tracts," then the sections subsequently surveyed were in the absolute lease district, and were not on the market for sale.

In order to ascertain the true meaning of a doubtful statutory provision, it is useful, and sometimes necessary, to look to the object the Legislature sought to accomplish by its enactment. The Legislature might have defined the district in question by calling for its lines, without reference to the boundaries of the counties which were to be wholly or partly embraced in it. But it is evident that they deemed it sufficient for the object they had in view to name the counties which were to constitute it. But just here a difficulty presented itself for which a provision had to be made. Where the line of a county embraced in the district constituted the boundary thereof, it would probably intersect many sections of school lands; and unless it was provided that such sections should lie either wholly within or wholly without the district, a part of each would be subject to an absolute lease while the other part would not. The result in almost every case would be a division of the surveys lying across the county lines into two parts of irregular shape, and would thwart the policy of our laws of selling the school lands in sections and subdivisions of sections, and result in confusion, and create a serious impediment to the business of the Land Office. In order to obviate such a difficulty, it was wise to provide that such surveys should lie wholly within or wholly without the district. It was provided that they should lie without it. This indicates the object and policy the Legislature had in view in making the provision last mentioned. Therefore we are of opinion that, by the words "tracts of land," only such lands as were actually surveyed at the time the Act was to take effect, and possibly such detached parcels of 640 acres or less as could be brought under the Act, without making an additional survey thereof, were intended to be included in the word "tracts."

Other language in the Act strengthens our conclusion. The first section provides that the Commissioner of the General Land Office shall notify the county clerks of the classification and valuation of the lands in their respective counties, and authorizes the employment of additional clerks to assist in performing that duty. The language of that section of the Act is: "That it shall be the duty of the Commissioner of the General Land Office to notify, in writing, the county clerk of each county the classification and valuation fixed upon each section of land

in his county," etc., thus indicating that only the surveyed and section-ized lands were in the minds of the Legislature. Again, in section 3, the Commissioner is prohibited from selling to the same person "more than four sections of land." In section 2 it is provided that an appli-cant to purchase "shall make a separate application for each tract ap-plied for," from all of which it is to be inferred that "tract" and "sec-tion" were used generally in the same sense, and that, in the provision first quoted, the tracts meant were tracts that had been surveyed, so as to put them upon the market for sale. Indeed, the words in the provision itself, "shall be considered for the purpose of sale and lease," tend, in our opinion, to show that only lands that were subject to sale were meant.

We think the mandamus should be refused, and it is accordingly so ordered.