INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V. J. H. L. JACKSON.

Decided June 12, 1907.

**1.—Requested Instructions—Special Issues.**

The submission of a case upon special issues does not deprive a party of the right to have the jury's attention affirmatively called to an issue asserted by him which has some evidence to support it.

**2.—Same—Overflow.**

Though the action for overflowing plaintiffs land by obstruction of a stream was submitted on special issues and by charges permitting recovery only for flooding due to the obstruction and which would be caused by ordinary rainfalls, requested instructions specifically excluding damages from overflow which would have occurred without such obstruction, should have been given.

**3.—Overflow—Extraordinary Rainfall.**

The fact that a rainfall was merely extraordinary did not relieve defendant from liability for damages for causing it to overflow plaintiff's land. The exemption applies only to such floods as could not, by ordinary care, have been anticipated.

**4.—Damage to Crops—Extraordinary Later Flood.**

The fact that, after being damaged by overflow caused by defendant, plaintiff's crop was afterward wholly destroyed by an unprecedented flood, did not relieve defendant from liability for damage suffered from defendant's wrong, but such damage would be limited to the value of the crop destroyed at that time, and such value, being dependent on the event of future growth and expense of raising and marketing, would be eliminated from consideration if the subsequent flood would have destroyed it in any event and without fault of defendant.

**5.—Overflow—Evidence—Damages.**

Evidence as to the probable yield and cost of cultivating, gathering and marketing is admissible to show the value of growing crop of cotton at the time of its injury or destruction by overflow, and a farmer experienced in cotton raising is qualified to testify thereto.

**6.—Opinion Evidence—Overflow.**

On the question whether the obstruction of a creek by the sliding of a railway embankment caused plaintiff's farm to be overflowed by ordinary rainfalls, witnesses who were familiar with the premises and the flow of the water before and after the obstruction may give their opinion as to its effect.

**7.—Evidence—Rainfall—Weather Record.**

The keeper of the nearest official weather records of rainfall for the Weather Bureau could testify as to the extraordinary nature of the season's rainfall though his record was kept at a place fifteen miles from the overflowed premises, such objection going to the weight of the evidence, not its admissibility.

Appeal from the District Court of Ellis County. Tried below before Hon. J. E. Dillard.

The witnesses, Hibler and others, of the admission of whose opinion evidence complaint was made in the fifteenth assignment of error, were farmers residing in the neighborhood and familiar with Cottonwood Creek before the construction of the railway and since, and, over objections that they had not shown qualifications for expressing an opinion, were permitted to describe the overflow of plaintiff's premises from ordinary rainfalls and testify that same were caused by the obstruction of the stream by the sliding of the embankment into it.

Witness Longseere, whose evidence as to the extraordinary nature of the rainfall in the season of 1904 and 1905 was excluded on plaintiff's objection that it was immaterial, was keeper of the official record of the United States Weather Bureau, at Waxahachie, the nearest point to plaintiff's premises, and fifteen miles distant.

*Templeton & Harding,* for appellant.—If the obstructions in Cottonwood Creek did not cause the overflow of the land of appellee, then it certainly would be the duty of the jury to find for the defendant, and it was the duty of the court to instruct the jury that if the land of appellee was not overflowed by reason of the obstruc-

tions, that the appellant would not be liable. It was especially the duty of the court to have specific findings from the jury on this question by submitting appropriate issues. Gulf, C. & S. F. Ry. Co. v. McClerran, 91 S. W. Rep., 653; San Antonio & A. P. Ry. Co. v. Kiersey, 98 Texas, 590.

Where, as in this case, the testimony showed that the acts of the appellant in obstructing the creek, at most tended only to add to the natural overflow that swept c er the lands of appellee, the appellant was only liabl⌐ for th⌐ damage caused by its acts, and not the damage caused by the natr ral overflow, and the jury should have been so instructed. S⌐n Antonio & A. P. Ry. Co. v. Kiersey, 98 Texas, 590; Austin & N. W. ⌐⌐. Co. v. Anderson, 79 Texas, 434; Gulf, C. & S. F. Ry. Co. v. McClerran, 91 S. W. Rep., 653.

The measure of damages for the destruction of a crop is the value of the crop at the time and place of destruction just as it stood upon the ground, not what it probably would have made. Sabine & E. T. Ry. Co. v. Smith, 73 Texas, 1; 72 Texas, 498.

The statement of the opinions of the witnesses mentioned in the fifteenth assignment was inadmissible because the witnesses and each of them were not in possession of facts sufficient to give an intelligent opinion. Their opinions were mere guesses. Gulf, C. & S. F. Ry. Co. v. Hepner, 83 Texas, 140; Gulf, C. & S. F. Ry. Co. v. Harbison, 88 S. W. Rep., 455; Shelley v. City of Austin, 74 Texas, 609; Texas & P. Ry. Co. v. Cochrane, 29 Texas Civ. App., 383; Haynie v. Baylor, 18 Texas, 504.

The evidence showing, beyond question, that the May rain of 1905, would have washed away the crop of 1905 regardless of the acts of appellant, it was error to refuse to set aside the finding against appellant for the value of that crop.

*McRae & Lumpkins,* for appellee.—When a special issue submitted is purely and simply a matter of fact and is plainly capable of correct determination as a fact, it is unnecessary to charge the law applicable to the findings of the jury under such issue. Rev. Stats., arts. 1330, 1331; Cole v. Crawford, 69 Texas, 124; Knight v. Southern Pac. Ry. Co., 41 Texas, 413; Heflin v. Burns, 70 Texas, 355; Michon v. Ayalla, 84 Texas, 685; Dodd v. Gaines, 82 Texas, 429; Newbolt v. Lancaster, 83 Texas, 271.

Injuries resulting from negligent, wrongful and unlawful acts can not be excused on the ground that it would have resulted at a later date by act of God. Hunt Bros. v. Missouri, K. & T. Ry., 74 S. W. Rep., 69; Missouri Pac. Ry. v. Barnes, 2 Texas App. C. C., p. 508; Adams Express Co. v. Jackson, 92 Tenn., 326.

Measure of damage to growing crop: Gulf, C. & S. F. Ry. v. Carter, 25 S. W. Rep., 1023; Texas & St. L. Ry. v. Young, 60 Texas. 204; Texas & S. Ry. v. Schofield, 72 Texas, 498.

Means of determining value of growing crops of cotton: International & G. N. Ry. v. Pape, 73 Texas, 502; Gulf, C. & S. F. Ry. v. Carter, 25 S. W. Rep., 123; Gulf, C. & S. F. Ry. v. Nicholson, 25 S. W. Rep., 54; Texas & St. L. Ry. v. Young, 60 Texas, 200; San Antonio & A. P. Ry. v. Kiersey, 98 Texas, 590.

On witnesses giving opinion based upon facts: Gulf, C. & S. F. Ry. v. Hepner, 83 Texas, 140; International & G. N. Ry. v. Klaus, 64 Texas, 294; Gulf, C. & S. F. Ry. v. Harbison, 88 S. W. Rep., 455.

Growing crop is personal property: Dallas & W. Ry. v. Kinnard, 18 S. W. Rep., 1063.

FISHER, CHIEF JUSTICE.—Appellee, in his third amended petition claims to be the owner of 100 acres of land on Cottonwood Creek, and that in December, 1902, the railway company constructed along the east side of Cottonwood Creek and nearly parallel with the creek for a distance of about 240 feet, and just east of the land of appellee, a dump about 24 feet high; which, it is alleged, by reason of the careless and negligent manner of construction, slumped into the creek, damming up the same. And that appellant also, by reason of a ditch it had constructed, diverted the water so as to cause it to enter the creek above the dam which otherwise would have entered below the same; that by reason of the matters stated about 25 acres of land belonging to appellee was caused to overflow from ordinary rains, and that in April, 1904, and in April, 1905, by reason of these obstructions, appellee's crops to the value of $750, were destroyed; that his land has been washed in holes and hollows and permanently damaged to the extent of $1,000; that the dump, embankment, ditch and obstructions in the channel of the creek were permanent and lasting in their nature; and asked for damages as above stated and an injunction perpetually restraining the further continuation of these obstructions.

The case was tried before a jury and submitted to them on special issues and verdict rendered for appellee in the sum of $853.20 damages, and judgment was rendered perpetually restraining and enjoining the appellant from obstructing the flow of Cottonwood Creek.

Appellant's first and second assignments of error complain of the action of the court in overruling demurrers. These assignments present no reversible error.

Appellant's 3d, 4th, 5th, 6th, 7th, 8th, 10th and 12th assignments of error will be considered together. These assignments substantially raise the question that the court erred in not submitting to the jury special instructions requested to the effect that if the waters would have overflowed the plaintiff's land and caused the damage complained of, regardless of the obstructions, then the plaintiff could not recover. Also that the railway company would not be responsible for such damages resulting from the overflow which were not caused by the obstructions; and in such case the damages to be charged to the appellant would be limited to what resulted from the obstructions. The principles of law embraced in these charges is recognized in the cases of San Antonio & A. P. Ry. v. Kiersey, 98 Texas, 590, and International & G. N. Ry. v. Walker, 17 Texas Ct. Rep., 269.

While it is true that the case was submitted upon special issues limiting the plaintiff's right of recovery to what might have resulted from ordinary rainfalls, still there is evidence in the record which tends to show that the overflow in question possibly covered the

plaintiff's land, and might have occasioned the damage, independent of the obstructions to the stream complained of by the plaintiff. Some of the charges presented by appellant, and which were refused, are not properly framed; but some present the issue in a general way, and some are so presented as to require a special finding of the jury upon the questions to be submitted; and we think, in view of the facts, it was the right of the appellant to have these questions passed upon by the jury. We do not understand that because a case may be submitted upon special issues, that a party is deprived of the right and privilege to have the jury's attention affirmatively called to an issue asserted by him which has some evidence to support it. We think it was error for the court to decline to submit the -issues above outlined.

Appellant's 13th assignment of error is as follows: "The court erred in refusing the 16th special issue asked by defendant to the following effect, 'If you should find any damage to the crop of 1905, you are instructed that if the rainfall in May was an extraordinary rainfall, then the damages, if any, caused by said April rains, if any, should be eliminated from the calculation in estimating the amount thereof. If said crops would have been destroyed by said rainfalls in May anyway, then defendant would not be liable therefor.'" While this charge is not correctly framed, but having reversed the case we call attention to the question raised, so that it may be considered if properly presented on another trial. The charge undertakes to exonerate the defendant on account of extraordinary rainfall. This is not the law. The rainfall must not only be extraordinary, but one that could not, in the exercise of ordinary care, have been foreseen or anticipated. If a charge upon another trial is correctly framed, then we think that the principle to some extent embraced in this instruction should be submitted. Of course, it is true that the plaintiff would be entitled to the value of the crop at the time it was destroyed, independent of what might have subsequently occurred that may have resulted in a destruction. But, while it is true the plaintiff is entitled to recover the value of the crop at the time it is destroyed, if there was a recent subsequent event, for which the appellant would not have been liable, and which would have resulted in the destruction of the crop, the plaintiff's measure of damages would have been limited to what was the value of the crop at the time it was destroyed.

The courts have ruled that, in determining the measure of damages for the destruction of growing crops, the market value at the time of destruction is the rule. Gulf, Colorado & Santa Fe Ry. Co. v. Nicholson, 25 S. W. Rep., 54; International & G. N. Ry. v. Pape, 73 Texas, 502; City of Paris v. Tucker, 15 Texas Ct. Rep., 241. But these cases, and others of a like kind, state the rule to be that in arriving at the value of growing crops it is permissible to prove probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the prob-

able crop in the market and the expense of maturing, preparing and placing it there will, in most cases, give the value of growing crops with as much certainty as can be obtained by any other method. The tort feasor or wrongdoer must be held responsible for the consequences of his acts; and there can be no sort of question about the liability of the appellant for the injury actually inflicted upon the appellee by reason of the wrongful conduct complained of, and for the damages then resulting the railway company would clearly be responsible; but it does seem to be an anomalous doctrine in sustaining the right of recovery, to permit the jury to consider as elements of damages matters and things which must necessarily have existed subsequent to the time that the second overflow occurred, for which the appellant would not be responsible. If, as a matter of fact, the injury and damage complained of would have resulted from an extraordinary flood of such a character that the appellant could not be held responsible therefor, we do not see how in principle the jury could have considered the probable yield and the probable value of the crop in question if it had been permitted to mature. If an extraordinary rainfall, one for which the appellant would not have been responsible, had destroyed this crop a short while subsequent to the first flood, there would have been left nothing upon which to base an estimate of a probable yield or of future value. Therefore, we are of the opinion that upon another trial, if the evidence is similar to that now shown by the record, that the issue discussed, if properly requested, should be submitted.

What we have just said, in connection with the cases cited, substantially disposes of the fourteenth assignment of error. We are of the opinion that the testimony there stated is admissible. It possibly should have gone further and shown what might have been the probable yield. The cases cited lay down the rule with reference to the measure of damages and the character of evidence admissible.

We are of the opinion that the evidence of the witness Longseere, which the court refused to admit, and which ruling is complained of in the 16th assignment of error, was admissible. The objections urged to it merely went to the weight of the testimony and not to its admissibility.

We pretermit a discussion of those assignments which raise questions of fact. We have pointed out what we consider to be the reversible errors in the record.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

Appellant and appellee have both filed motions for rehearing. We overrule the motion of appellee without comment, and also overrule the motion of appellant with the statement that, in disposing of the fourteenth and fifteenth assignments of error, we intended to hold that the witnesses whose testimony was objected to were qualified to testify.