Southwestern Telegraph & Telephone Company v.
G. L. Sanders et al.

No. 2339. Decided February 24, 1915.

**1.—Master and Servant—Implement Rendered Dangerous by Servant.**

Where the master has furnished his servant with a safe appliance in a safe condition, he is not liable for the latter's injury from its becoming defective or unsafe without the master's knowledge and solely by the acts of the servant himself or of others for whom the master was not responsible. (P. 53.)

**2.—Same—Electric Wires—Case Stated.**

A servant of a telephone company engaged in moving its uncharged wires by use of a rope attached thereto received injury by an electric shock, through the rope, which had become wet and a dangerous conductor, coming in contact with the highly charged wires of a light company stretched below those of the telephone. The evidence was uncontradicted that the rope was dry when furnished for plaintiff's use, but became wet by being dragged on the ground after a rain, in its use by plaintiff and his fellow servants without knowledge of defendant or anyone who was its vice-principal. An instruction permitting the defendant telephone company to be held liable for negligence if it furnished a wet rope or permitted it to get wet while in use was unwarranted by the evidence, and erroneous. (Pp. 51-53.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Bell County.

Sanders sued the telephone company and the Cameron Water, Light

and Power Company but recovered only. against the former. It appealed, and on affirmance obtained writ of error.

*A. P. Wozencraft* and *Scott, Sanford & Ross,* for plaintiff in error.— The following portion of the court's charge, "and that said rope had been permitted by said defendant telephone company to become wet," was erroneous and prejudicial to plaintiff in error, in that it presented to the jury an issue not raised by the evidence, the evidence being plain and undisputed that the defendant telephone company had not permitted said rope to become wet; and was in nowise responsible if it did become so. Texas & Pac. Ry. Co. v. Moore, 8 Texas Civ. App., 289; Denham v. Trinity County Lumber Co., 73 Texas, 78.

*E. A. Wallace* and *W. A. Morrison,* for defendant in error Sanders.— It is the non-delegable duty of the master not only to furnish to the servant reasonably safe appliances but to use ordinary care to maintain them in such condition, his duty being a continuing one. Street on Personal Injuries, pp. 221 and 222; Santa Fe Ry. Co. v. Holmes, 202 U. S., 438, 50 L. Ed., 1097; Quinn v. Glenn Lumber Co., 126 S. W., 2; 2 Labatt, Master and Servant, secs. 555-557.

The servant does not assume the risk added by the action of supervening agencies upon an appliance furnished to him to work with, and which appliance though safe under normal conditions is highly dangerous under. the given conditions and which condition of danger is a matter of scientific knowledge unknown to the servant, and not open to ordinary observation, but which is known to the master. 20 A. & E. Enc. Law (2nd ed.), 120, 122; Railway Co. v. Hannig, 91 Texas, 351.

If the rope in question, in the usual and customary course of usage became wet and thereby unsafe and dangerous, and if such fact was, or should have been known to the foreman by the use of ordinary care, and was unknown to Sanders, and such danger was not open to ordinary observation, and not such a risk as was assumed by him as a matter of law, it then became the duty of the foreman to anticipate and to warn Sanders of the added danger; and he is not excused from such duty from the fact that the rope when first furnished was dry, and, therefore, safe. Railway Co. v. O'Hare, 64 Texas, 602; Railway Co. v. Callbreath, 66 Texas, 526; 20 Am. & Eng. Enc. of Law (2nd ed.), 95, 96; Fordyce v. Yarborough, 1 Texas Civ. App., 260; Martin v. Wrought Iron Range Co., 4 Texas Civ. App., 185; Mo. Pac. Ry. Co. v. Watts, 64 Texas, 568; Texas Mex. Ry. Co. v. Douglas, 73 Texas, 325; I. & G. N. Ry. Co. v. Smith, 30 S. W., 501; H. & T. C. Ry. Co. v. Higgins, 22 Texas Civ. App., 430.

*A. L. Curtis* and *Henderson, Kidd & Gillis,* for Cameron Water, Power and Light Company.

Mr. Justice PHILLIPS delivered the opinion of the court.

The suit was instituted by G. L. Sanders, one of the defendants in error, against the Southwestern Telegraph & Telephone Company and

the Cameron Water, Light and Power Company to recover damages on account of personal injuries sustained by him while engaged in the service of the company first named, and resulted in a judgment in his favor against that company alone.

At the time of his injury Sanders, with other employees of the telephone company, was engaged in removing a dead wire from its poles in the city of Cameron. The poles and light wires of the light company stood upon the same side of the street and in line with the poles of the telephone company; the poles of one company being located between those of the other; the wires of the telephone company being more than ten feet above those of the light company and something over thirty feet from the ground. Sanders was engaged in the particular work under the direction of a vice principal of the telephone company, and with two other employes was furnished with a rope to be employed in the work, and instructed to remove the wire. The work was to be performed, in part, by one of the men ascending a telephone pole and fastening the rope to the end of the wire, which was to be pulled to the adjoining pole by another one of the crew, the rope being dropped when the wire reached the latter pole and being then picked up and carried to the next pole, where the operation was repeated. In the progress of the work, Sanders, while upon one of the poles dropped the rope in order that it might be taken up by the employees on the next pole. In being dropped it became entangled with an electric light wire of the light company beneath the telephone company's wires and an awning. It was a part of Sanders' duty to relieve the rope of this entanglement, and in doing so he ascended a pole of the light company, stepped off on the awning and caught the rope with one of his hands, whereupon he received an electric shock, causing his injury. The insulation upon the light company's electric wire with which the rope had become entangled, had become worn and defective. The rope had become wet in the course of the work, it having rained the night before, which made it a conductor of electricity; and its contact in this condition with the charged electric light wire subjected Sanders to the current. An arrangement existed between the two companies whereby the light company, if it had been so requested by the telephone company, would have cut off the current from its wires while Sanders and his co-employees were engaged in their work. Negligence was charged against the telephone company because of its failure to have the current cut off from the light company's wires while the work was being performed, and on account of the wet condition of the rope, it being alleged in this latter connection that it had permitted the rope to be exposed to dampness and moisture the night before and to be dragged through the wet streets of Cameron to the place of the work before it was begun, and while in use in the progress of the work.

The statement we have made of the case is a summary of the findings of the Court of Civil Appeals.

The testimony appears to be without dispute that the rope was dry when furnished by the telephone company to Sanders and his co-em-

ployees, and in this condition was safe for use in the work, though subjected to contact with a live light wire. It was found by the Court of Civil Appeals that its wet condition "was caused by the rope's having been dragged on the wet ground by the plaintiff and his fellow servants in the performance of the work referred to."

Among other instructions given the jury in the charge of the court was the following:

"You are instructed that if you find and believe from the evidence that the plaintiff was in the employ of the defendant, telephone company, and that it was part of his duty to go upon the telephone poles and handle and use the rope mentioned in the pleadings in this case, in the manner alleged in taking down said wires, and you further believe that said rope became entangled with an awning in front of a building adjoining to where he was required to work, and that it was a part of his duty to disentangle said rope, and that he went upon said awning in the course of his employment for the purpose of disentangling said rope, and that said rope had been permitted by said defendant, telephone company, to become wet, and that in such condition it would transmit a current of electricity, and that without any fault or negligence on the part of the plaintiff, the said rope did come in contact with one of the exposed wires of the defendant light company, and that by reason thereof a current of electricity was caused to pass through said rope into his body, and caused him to fall from said awning, and that he was injured thereby, then you are instructed, if you believe from the evidence that both of said defendants were guilty of negligence in the respects as herein submitted to you, and that both of their said negligent acts co-operated or combined to cause the injuries to the plaintiff, and that he was injured as alleged by him, then you are instructed, if you so believe and find, the plaintiff would be entitled to recover against both of said defendants, and you will in that event find a verdict in his favor against both of them. But, on the other hand, if you believe that the plaintiff was injured, but that his injuries were the direct and proximate result of the negligent acts of only one of said defendants, then you are instructed that he would be entitled to recover a judgment against only the said defendant whose negligent acts caused his said injuries; and in that event the other defendant will be entitled to go free."

Another part of the general charge was to the following effect:

"But, on the other hand, if you believe from the evidence that the plaintiff was not guilty of contributory negligence, as hereinbefore defined, and that he was injured as alleged, and that his said injuries were not caused by, and did not result from the risks ordinarily incident to his employment as hereinbefore defined, and you further find the defendant telephone company failed to exercise ordinary care, as hereinbefore defined, to furnish the plaintiff with reasonably safe appliances with which he was required to work, if he was so required, or that the defendant, or either of them, failed to exercise ordinary care to dis-

cover the exposed condition of the said electric light wire, if you believe it was exposed, and that thereby it became dangerous and likely to divert a current of electricity, and that said current was diverted from said wire to said rope and into or through the person of the plaintiff, and that the defendant telephone company did furnish said wet rope to the plaintiff, if it was so furnished, and that said rope was likely to and did transmit said current of electricity into the plaintiff, and that the doing and failure on the part of said defendant, or either of them, to do, or perform the things herein mentioned, if they did so do and did fail to so do and perform them, and that such doing and failure on their part, or on the part of either of them, constituted negligence, and that such negligence was the direct and proximate cause of the injury to the plaintiff, if any, you should find a verdict for the plaintiff."

To warrant the first of these instructions it was necessary that there be some evidence that the wet condition of the rope was due to some act or omission on the part of the telephone company, since the charge necessarily assumed there was evidence "that the rope had been permitted by it to become wet." To support the other, it was likewise necessary that there be some evidence that the telephone company furnished to Sanders a wet rope. Instead of there being any testimony to such effect, the undisputed proof appears to have been that the rope, when furnished by the company to Sanders and his co-employees for their use in the work, was dry and perfectly safe for the work, and that its becoming wet was due solely to the subsequent act of Sanders and his fellow servants in dragging it upon the wet ground, in the absence of the vice-principal and of which the latter had no knowledge. In this state of the evidence the wet condition of the rope could not be attributed to any fault of the company, and an instruction which permitted its being held responsible for such condition was plainly unauthorized and prejudicial.

It is equally clear that the submission of the issue of the company having furnished Sanders with a wet rope was erroneous, there being no evidence that it had done so.

It is the duty of a master to use ordinary care to provide the servant with reasonably safe tools and appliances for the work in which he is engaged, and to use like care to keep them in repair. But it would be the announcement of a manifestly harsh and unjust rule to say that where he has furnished his employee with a safe appliance, in a safe condition when furnished, he is, nevertheless, liable for a defective condition, though produced solely by an act of the employee or others, for which he is not responsible and of which he had no knowledge, and which condition he had no opportunity to remedy.

The judgments of the District Court and the Court of Civil Appeals are affirmed as to the judgment rendered in favor of the Cameron Water, Light and Power Company, and are reversed as to the judgment in favor of G. L. Sanders against the Southwestern Telegraph & Tele-

phone Company, and the cause is remanded for further trial as between the last named parties.

*Affirmed in part and in part reversed and remanded.*