GALVESTON, H. & S. A. RY. CO. v. WIL-
SON.   (No. 9110.)

(Court of Civil Appeals of Texas. Ft. Worth.
May 31, 1919.   Rehearing Denied June
28, 1919.)

1. RAILROADS ⏤282(5)—INJURY TO SHIPPER
—LOADING STOCK—EVIDENCE.

In action for injuries to shipper of stock al-
leged to have been caused by flashing a light be-
fore animals on loading chute causing them to
rush back and trample plaintiff, evidence *held*
to raise the issue whether or not the light
which frightened the animals came from a
trainman's lantern or from some other source.

2. RAILROADS ⏤282(2) — SPECIFICATION OF
NEGLIGENCE CAUSING INJURY TO SHIPPER
LOADING STOCK.

Where a stock shipper, trampled by fright-
ened animals on a loading chute, alleges par-
ticularly in a complaint for injuries that the
light causing the fright came from a trainman's
lantern, he is limited to the particular act of
negligence specified.

3. NEGLIGENCE ⏤119(3)—ISSUES — GENERAL
DENIAL.

A particular act of negligence alleged is put
in issue by a general denial, and plaintiff is
limited to the act specified.

4. TRIAL ⏤203(3), 251(1) — INSTRUCTIONS—
AFFIRMATIVE PRESENTATION OF CASE —
PLEADING.

A litigant is entitled to have his defense or
cause of action affirmatively submitted, and a
general denial is sufficient to require the sub-
mission of any defensive issue raised by the
evidence which is not required by statute or
rules of pleading to be specifically pleaded.

5. TRIAL ⏤260(8) — REQUESTED INSTRUC-
TIONS.

In action for injuries to shipper of stock
caused by a member of the train crew flashing
his lantern at night before horses and mules on
loading chute, causing them to rush back and
trample plaintiff, who was loading them on the
chute, a requested charge that, if plaintiff was
injured as the "sole proximate cause" of the wild
and unruly nature and disposition of the mules
and horses, verdict should be for defendant, even
though defendant was guilty of negligence, was
sufficiently presented by a charge that if their
wild and unruly nature and disposition, if any,
was the sole proximate cause of plaintiff's in-
juries, to find for defendant.

6. TRIAL ⏤251(8)—INSTRUCTIONS—APPLICA-
BILITY.

Plaintiff shipper having alleged his injuries
were caused by a certain negligent act of "one
of the train crew," it was improper to submit
the issue whether or not some other employé
of defendant was guilty of the act of negligence
charged.

7. NEGLIGENCE ⏤138(1) — INSTRUCTIONS—
AFFIRMATIVE PRESENTATION OF ISSUE.

In personal injury case against a railroad,
defendant was entitled to an instruction in the
affirmative form that, although the jury found
that defendant's brakeman committed the act
charged by plaintiff, yet if they further found
that brakeman not guilty of negligence in so
doing verdict should be for defendant; there be-
ing evidence raising the issue whether the act
was negligent.

Appeal from District Court, Tarrant Coun-
ty; R. E. L. Ray, Judge.

Action by W. T. Wilson against the Galves-
ton, Harrisburg & San Antonio Railway Com-
pany.   From judgment for plaintiff, defend-
ant appeals.   Reversed and remanded.

Thompson, Barwise & Wharton, of Ft.
Worth, Baker, Botts, Parker & Garwood, of
Houston, and Alfred McKnight, of Ft. Worth,
for appellant.

R. M. Rowland, of Ft. Worth, and Louis
Wilson, of Dallas, for appellee.

BUCK, J.   Appellee, hereinafter styled
plaintiff, sued appellant, hereinafter styled
defendant, for personal injuries alleged to
have occurred at Sabinal, Tex., about July
18, 1916.   He alleged that he, with others,
including members of a freight train crew,
who were employés of the defendant in the
nighttime were engaged in the work of load-
ing certain horses and mules into a stock
car of the defendant, which car, when so
loaded, was to be transported by the defend-
ant and its connecting carrier from Sabinal
to North Ft. Worth.   He further alleged:

"That while plaintiff was doing the work
aforesaid, and was in the exercise of due care
for his own safety, and was in a stock pen con-
taining said animals, or in the chute leading
from said pen to the door of the car into
which the animals were being loaded, and was
properly urging and driving said animals
through the chute and into the car, one of
said employés of the defendant company, a
member of said train crew, whose name is to
plaintiff unknown, acting in the course of his
employment, and within the actual and appar-
ent scope of such employment, and in the ef-
fort to further the defendant's business by aid-
ing in the loading of said car, but at the same
time acting negligently and incompetently, sud-
denly got on or in the said chute near the end
of the same next to the car, and flashed and dis-
played his lighted train lantern in said chute,
and immediately before the eyes of certain of
said horses and mules, whereby they, or at least
some of them, were blinded, frightened, and
confused, and caused to rush back down the
chute and into the pen, knocking down and
trampling him."

Plaintiff further alleged that he was right-
fully at the place where he was at the time
of the injuries, and was rightfully engaged
in the work he was doing, and "the defend-
ant, its agents and employés, owed him the
duty to exercise ordinary care to protect his
safety while he was so engaged, but they,

and each of them, negligently failed to discharge such duty; that such failure consisted in causing and permitting the act of negligence above set out." He prayed for damages in the sum of $4,000, and upon a trial before a jury plaintiff recovered a judgment in the sum of $2,000, from which judgment the defendant has appealed.

Assignments 1 and 2 complain of the refusal of the court to submit the following special requested instruction, to wit:

"You are instructed that if you believe and find from the evidence in this case that the mule or mules or horses, if any, which ran over the plaintiff, were caused to do so by reason of a light or flash other than a lantern of defendant's brakeman or other employé, then you are instructed that your verdict herein will be for the defendant herein, even though you believe and find from the evidence that the plaintiff sustained the injuries, or any of the injuries, complained of."

The evidence shows that the stock pens, where plaintiff's mules and horses had been placed for the purpose of loading, had a chute or narrow passway leading from one of the pens to the open door of the car as it was being loaded. This chute consisted of two sections, the one nearest the pen being wider than the one next to the car. Plaintiff's employé, Paul Johnson, undertook to drive the mules or horses, a few at a time, from the pen into the chute, and by the plaintiff, who was stationed on the side of the chute. When the animals passed plaintiff, he would get behind them and drive and prod them into the car, being aided by two members of the train crew, one on each side of the narrow chute, and standing on the outside thereof on a narrow platform or footpath. Plaintiff testified in part as follows:

"I would say I began loading the animals into the car at about nine-thirty at night; it might have been a few minutes earlier than that. * * * Mr. Johnson went down with me to help load the stuff, and a young fellow that works at the depot and a Mexican that was there went down, and the train crew. Johnson is the man whose deposition has been read to the jury. I had an arrangement with him to accompany the animals on the train from there to North Ft. Worth, and he did so. I did not intend going with them myself, but I was sending Johnson along as the caretaker. Johnson was helping me load the animals. * * * You see they go down, set the car, and put down the platform between the loading chute and the door, and fix the door and stand at the door, and then we load them from the pens. The railroad people do that. * * * When the car was set at the chute there was a brakeman rode down on top of that car, supposed to set the brake or something. He was on top with a lighted lantern. I told Mr. Johnson to bring the mules in from four to seven at a time, and I had a hickory stick about six feet long—it was a measuring pole, is what it was—and he would bring them in to me and I would run them up on the chute.

This stuff was brought up here, and there was a brakeman on top of the car with a light. It is pretty near an impossibility to drive a bunch of mules facing a light at night. I had same racket with this brakeman, and it is a fact that I used right smart of rough language, and I finally got him off, and he got down on the side of the chute.

"There is a platform running up to this chute, I would say about half way up the top of the fence, for a man to walk up and down, and if they got up there they bothered me with the light, and I got them off of there, and we got all the stock loaded except seven or nine head. There was probably five or six head in this chute, and with the light not being there, when the mules turned back to come back, why I could step to the other side, because a mule is going to follow his head, whichever way he turns. His head was ahead of him, and he would go that way and I would step to the other side. Several of them had run back two or three times before that, and I just stepped to one side. This small chute is about three and a half or four feet wide, so that a good-sized mule or horse could not turn in there, and after he gets into that chute there is a little gate that swings back, and when I would get them started up there they would never stop until they got into the car. We got this bunch of mules up there, and there was a light throwed over from the side, and when that light was throwed in there it blinded me and the mules, too, and when the mules came back I could not tell whether it was a mule or a shadow, and the whole bunch ran over me. I don't know how many hit me, but they ran over me. I suppose the light that flashed there came from the lantern that a brakeman had; they had been around there with them, and they had the lights, and they were the only people that I saw with a light—the brakemen that were down there.

"When this lighted lantern was flashed or thrown, it was thrown over into that pen. The way a man could get up high enough to throw the light over into the chute is on the platform running there; it runs up the fence, about half way up to the top. There is a platform on both sides that the men walk up and down in loading. They use the platform to aid them in loading the animals. They punch them through the fence as they go by to urge them on and keep them from stopping. * * *

"I don't know how many feet the lantern was away from the eyes of the mules. He might have been able to hit one of them on the head with the lantern. He could reach over there; there was just a fence between them. * * * There had been no light around there except the lights had by the members of the train crew. I did not see any other light there at all. I don't remember whether the boy from the warehouse or depot that went down there had a light or not; he probably had, because he goes down there, and he is the man that seals the car, and probably he had a light."

On cross-examination the plaintiff further testified:

"As I have testified, I think this man that was there with the lantern turned his light over there to head a mule back towards the car. That

is my opinion as to what he did, and at that time I was probably from seventeen to twenty feet from the gate where the man was. * * * I could not say that I really knew the mule that knocked me down was coming back at all, because I could not see him. As soon as this light flashed the mules were moving, and I could see the shadows across the pen, but to see it on the fence I could not tell a shadow from a mule. * * *

"The instant the man threw the light over there the mules ran over me. I could have had time to get out of the way if I could have seen which way they were coming, but the lantern blinded me—the movement of the glare of the lantern."

Plaintiff's witness Paul Johnson testified upon this point as follows:

"Mr. Wilson complained two or three times about the lanterns being at the head of the chute. The boy who worked at the depot said that he would throw his lantern away; but Mr. Wilson, who is rather old, and probably harsher than necessary, told the boy that he didn't give a damn what he did with the lantern, just so he kept it out of sight. * * * I had just succeeded in getting the last mule and horse in the latter end of the chute (Mr. Wilson was at that time in the throat of the chute). I was behind the animals. I saw a light make a flash in front of me. The animals hid from my view, whether it was a lantern waved or what not; the animals who were at that time in the chute made a run to the back end of the chute. I immediately climbed the fence. I saw Mr. Wilson lying on the ground."

"Q. If a brakeman or other member of the train crew did anything with his lantern just before the accident to Mr. Wilson, then state fully just what he did; also describe fully what, if anything, happened immediately after such action, if any, on the part of said member of the train crew. A. Well, I don't know about that. I saw a flash of light just before the mules stampeded. I don't know whether it was from a lantern or what it was from, it might have been from some one lighting a cigarette, but I know that there was a flare of light beyond the mules where I was. * * * At the time the mule knocked Mr. Wilson down I did not see any one with a lantern at any place where they would have frightened the mule. I saw the flare of light, but I don't know whether it was a lantern or not. * * * It is a fact that I saw no light at the time the mule in question knocked Mr. Wilson down; I saw a flare of light, but I don't know from whence it came. * * *

"I wish here to draw the line between a light and a lantern. If my memory serves me correctly, in discussing this matter with Mr. Bonner (the claim agent), he interrogated me with reference to a lantern, and I saw no lantern after the time that Mr. Wilson raised an objection to the lantern being used at the head of the chute, but I did see a light, or a flash of light, as previously stated by me."

The evidence further shows that there were some six or eight boys or young men, ranging from 15 to 18 years of age, who had congregated near the place of loading, and were standing "on the sand pile or on the chute" during said time. The members of the train crew and the warehouse foreman, one of the employés of the defendant, who were present at the time, testified in the case, and denied that a lantern was flashed at the time of the accident. Jordan, the warehouse foreman, testified that none of the boys or spectators around there had a lantern that he saw, but that it was possible that they got up on the side of the pen and lighted matches, but he could not say whether or not they did so. He further testified that there was no brakeman flashed any light over there just about the time the plaintiff was knocked down.

[1-3] We are of the opinion that the evidence, quoted and cited and some other of a like nature, is sufficient to raise the issue of whether or not the light which plaintiff claims caused the mules to turn back and run over him came from a lantern in the hands of a member of the train crew or from some other source. While it was not necessary, perhaps, for plaintiff to specify particularly that the light which he claimed was responsible for the accident came from a lantern in the hands of a member of the train crew, yet he did so allege, and, having so alleged, he is limited to the particular act of negligence specified. The particular act of negligence alleged was put in issue by the general denial of defendant, and further put in issue by the testimony heretofore mentioned. Ry. Co. v. Johnson, 100 Tex. 237, 97 S. W. 1039; Ry. Co. v. Moyer, 128 S. W. 1135; Ry. Co. v. Jackson, 47 Tex. Civ. App. 26, 103 S. W. 709; Ry. Co. v. Smith, 101 S. W. 453; Bolt et al. v. Bank, 145 S. W. 707.

[4] That a litigant is entitled to have his defense or cause of action affirmatively submitted, and that a defendant's general denial is sufficient to require the submission of any defensive issue raised by the evidence, which is not required by statute or rules of pleading to be specially pleaded, has been decided many times by our Supreme Court. Ry. Co. v. Wallace, 206 S. W. 505; Wichita Falls Tr. Co. v. Adams, 107 Tex. 612, 183 S. W. 155; Yellow Pine Oil Co. v. Noble, 101 Tex. 125, 105 S. W. 318. Hence, we conclude that assignments 1 and 2 must be sustained.

[5] In the third assignment complaint is made of the failure of the court to charge the jury that if they found and believed that plaintiff was injured as the sole proximate cause of the wild and unruly nature and disposition of the mules and horses, then their verdict would be for the defendant, even though the defendant was guilty of the negligence alleged, and even though the plaintiff sustained the injuries, or any of the injuries, alleged. The court did charge the jury as follows:

"If you believe from the evidence that one or more or all of the animals in question were wild and unruly, and that their wild and unruly

nature or disposition, if any, was the sole proximate cause of plaintiff's injuries, if any, then you will find for the defendant."

We are of the opinion that the charge given was a sufficient presentation of the law upon this question. The cases relied upon by appellant to sustain this assignment, such as Ry. Co. v. Neff, 87 Tex. 301, 28 S. W. 283; H. & T. C. Ry. Co. v. Burns, 41 Tex. Civ. App. 83, 90 S. W. 688; Ft. Worth & D. C. Ry. Co. v. Gatewood, 185 S. W. 932; T. & P. Ry. Co. v. Dawson, 34 Tex. Civ. App. 240, 78 S. W. 235—are cases involving the issue of contributory negligence, and in those cases it was held that a charge should have been given, in effect, that if the jury should find that the plaintiff was guilty of contributory negligence proximately contributing to the injury alleged, that the jury should find for the defendant, even though they should further find that the defendant was guilty of negligence as alleged. The rule of law which denies a recovery to a plaintiff who has himself been guilty of negligence, proximately contributing to the injury complained of, is in the nature of a penalty, established to encourage the utmost diligence, care, and caution on the part of one for his own safety. Hence, except where otherwise provided by statute under the rule of comparative negligence, the plaintiff who has been guilty of contributory negligence is required to bear the full responsibility of the result of such contributory negligence, even though the contributory negligence of the plaintiff may concur with the negligence of the defendant in producing the injury. We think that if the wild and unruly nature of the animals was the sole proximate cause of the injury, as submitted to the jury, that such hypothesis excludes the theory that the defendant was guilty of negligence proximately contributing to the injury in question. Hence we conclude that the charge given was not subject to the criticism made, and we overrule appellant's third and fourth assignments.

[6] In the sixth paragraph of the court's main charge the jury were instructed, in effect, that if they should find that the defendant was injured at the time and place and under the circumstances alleged, and that "a brakeman, or other employé of the defendant there present, got on the chute with a lighted lantern, and flashed or displayed said lantern in the chute or pen, and over the top of the fence constituting the side of the chute or pen; that at the time such employé did said act (if he did) one or more of the animals were then in the chute or pen near that place, and were thereby blinded, frightened, or confused by the sudden flashing of the light, and were thereby caused to rush back towards the pens, and in so doing strike plaintiff and knock him down and injure him," etc.—they should find for the plaintiff, unless they found for the defendant under other instructions given by the court.

It is complained in the sixth, seventh, eighth, and twelfth assignments that the court erred in submitting to the jury the issue of whether or not "any other employé" was guilty of the negligence alleged. We think these assignments must be sustained. The plaintiff having elected to specify particularly that the employé whose negligent acts were relied upon to sustain the recovery was "one of the train crew," it was improper to submit the issue as to whether or not some other employé not a member of the train crew flashed the lantern in front of the animals and caused them to turn back. As before stated, the witness Jordan was an employé of the defendant, was present and had a lantern, and was on the chute counting the animals at the time of the accident, though he testified that he did not have a lantern with him, as did also the two brakemen. Jordan further testified that he was not a member of the train crew. Under the allegations of the petition, plaintiff would not have been entitled to recovery if his injuries were caused by the negligence of Jordan, though under the charge given the jury would have been justified in finding for the plaintiff even though they believed that Jordan's negligence caused the injury. Hence said four assignments are sustained. Lewis v. Hatton, 86 Tex. 533, 26 S. W. 50; T. & P. Ry. Co. v. French, 86 Tex. 96, 23 S. W. 642; M., K. & T. Ry. Co. v. Poole, 104 Tex. 36, 133 S. W. 239; Scott v. St. L. S. W. Ry. Co., 54 Tex. Civ. App. 54, 117 S. W. 890, writ of error denied; Tel. & Tel. Co. v. Sanders, 107 Tex. 49, 173 S. W. 865; Ft. W. & D. C. Ry. Co. v. Yantis, 185 S. W. 969–973; K. C., M. & O. Ry. Co. v. Cole, 183 S. W. 137; Jamison v. Measels, 207 S. W. 365; Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112.

[7] In the ninth, tenth, and eleventh assignments complaint is made of the failure of the court to instruct the jury that though they should believe and find from the evidence that the defendant's brakeman threw or placed his lighted lantern in front of the mules' or horses' eyes, as alleged in plaintiff's petition, yet if they should further believe and find from the evidence that the said brakeman was not guilty of negligence in so doing, then they would return a verdict for the defendant. We are of the opinion that said instruction should have been given in the affirmative form. Appellee testified:

"This man threw the light over right in amongst the mules. It looked like he was trying to head them to keep them from coming back, but when he throwed the light over it blinded them. * * * I suppose the man on the side there was trying to assist in loading them, because we had been some bit in loading them, and he threw the lantern over there, I suppose to head the mules."

This evidence and other testimony of like import raised the issue of whether or not the alleged act of the brakeman in throwing the lantern in front of the mules, even if admitted that such was done, was negligence. Even though said act was the proximate cause of plaintiff's injuries, yet if it was one which an ordinarily prudent person similarly situated would have done defendant would not have been liable.

We do not think it necessary to discuss other assignments, but conclude, for the reasons given, that the judgment of the trial court must be reversed and the cause remanded, and it is so ordered.

---

&#x21DD;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes