FREEMAN v. MOREMAN et al.

(Court of Civil Appeals of Texas. Austin. April 3, 1912. Rehearing Denied April 24, 1912.)

1. PLEADING (§ 228*)—DEMURRER OR EXCEPTION—GROUNDS—DISCLOSING DEFENSE.

An exception to allegations of a petition in an action for the death of a person who, when killed, was trespassing on defendant's right of way, on the ground that it shows contributory negligence on its face, is properly overruled, where the allegations of the petition might show that he was a licensee.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. § 228.*]

2. EVIDENCE (§ 474*)—OPINIONS — QUALIFICATIONS OF WITNESSES.

A witness who, although he is not an engineer, knows nothing about the mechanism of an engine, and never worked on a railroad, has lived at a junction of two railroads for a great many years in sight of both tracks, has seen a great deal of switching, has been engaged in shipping and observed cars moving on the tracks, has noted the length of time required to stop them, and has himself stopped them, presumably by signaling, and who saw the train in question at the particular time involved and observed its speed, may testify that from his experience and observation the train could have been stopped within 20 feet.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. § 474.*]

3. EVIDENCE (§ 150*) — COMPETENCY — RESULTS OF EXPERIMENTS.

In an action for the death of a person by being hit by a freight train, where it is claimed that the brakeman should have discovered deceased's peril, a witness who got on a freight car similar to the one in which the brakeman was and in a similar position on a straight, level track, as the track was shown to be at the place of the accident, in order to determine how far in front of the car a person could be seen on the track, may testify to the result of his experiment, especially where his testimony is given on the second trial of the action and the brakeman has failed to make any such experiment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439; Dec. Dig. § 150.*]

4. DEATH (§ 65*)—ACTIONS FOR CAUSING — EVIDENCE—LIFE EXPECTANCY.

In an action for negligence causing death, testimony as to the life expectancy of deceased was proper, although the plaintiffs were minor children who had no legal right to pecuniary aid from their father after their majority, since it was proper to show that he had a life expectancy at least during their minority, and if the defendant wished the evidence limited to this point, he should have requested an instruction to that effect.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 84; Dec. Dig. § 65.*]

5. EVIDENCE (§ 471*)—COMPETENCY — FACTS OR CONCLUSIONS.

A question to a railroad conductor, whether it was dangerous to back a train in a place where people went without taking precautions to prevent injuring them, called for a matter of fact and not a conclusion of the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

6. RAILROADS (§ 397*)—ACTIONS FOR INJURIES—PRECAUTIONS AGAINST INJURY.

It is not error to exclude testimony that it is dangerous to back a train without taking precautions to guard against injury to persons who might be there, when the accident involved occurred at a place where the railroad company was under no legal obligation to guard against such danger.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1344–1355; Dec. Dig. § 397.*]

7. WITNESSES (§ 270*)—CROSS-EXAMINATION.

In an action for the death of a person by being struck by a railroad train, while trespassing on the tracks at a place where the company was in the habit of switching its cars, and which was not used by the public for the purpose of walking thereon, and where people had no right to be and were not liable to be, a question asked a conductor on cross-examination whether it was a rule in switching, where people were walking and liable to be, to keep a brakeman at the rear end to prevent injuring them, should be excluded, since based on facts not shown by the evidence.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 926, 955–957; Dec. Dig. § 270.*]

8. APPEAL AND ERROR (§ 499*)—BURDEN OF SHOWING ERROR.

An alleged error in excluding questions asked a witness will not be considered, in the absence of the ground of objection in the bill of exceptions, where they might properly have been excluded on the ground that they were leading.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

9. WITNESSES (§ 363*) — IMPEACHMENT — SHOWING BIAS.

It is always proper to show that an adverse witness is biased.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1177, 1178, 1181; Dec. Dig. § 363.*]

10. RAILROADS (§ 401*)—ACTIONS FOR INJURIES—INSTRUCTIONS—DISCOVERED PERIL.

In an action for the negligence of a railroad company causing the death of a trespasser, where the plaintiff has alleged and attempted to prove negligence in the operation of the train, in not keeping a proper lookout, and in not discovering the presence of the deceased on the track, the refusal of special instructions to find for the defendant unless it affirmatively appeared that deceased's presence was actually discovered by defendant's agents, and that they realized, or should have realized, that he would not remove himself from the track in time to avoid being struck, and that if they discovered such peril they did not exercise ordinary care to avoid injuring him, was error, though the court in its main charge submitted no issue but that of discovered peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1382–1390; Dec. Dig. § 401.*]

11. APPEAL AND ERROR (§ 1026*)—REVERSAL —ERRORS JUSTIFIED.

A judgment will be reversed for errors which otherwise might not constitute reversible error, where the evidence is very nearly insufficient as a matter of law to sustain the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4029, 4030; Dec. Dig. § 1026.*]

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by Cecil Moreman and others, by next friend, against Thomas J. Freeman, receiver. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Fisher & Fisher, Jno. M. King, and Doremus, Butler & Henderson, for appellant. Freeman & Kidd, T. S. Henderson, and J. W. Garner, for appellees.

JENKINS, J. This suit was brought by the next friend of the minor children of B. F. Moreman, deceased, who was killed upon the track of appellant at Milano Junction by being run over by the cars of appellant while backing to make up a train. There was a judgment for the plaintiffs for $6,156, apportioned between them. The evidence clearly establishes that the deceased was a trespasser upon the track at the time of his death, and was guilty of contributory negligence in going upon the track at the time and under the circumstances of this case.

[1] 1. The appellant by several assignments of error complains of the action of the court in overruling special exceptions to plaintiff's petition. The substance of his complaint is that the petition showed upon its face that the deceased was guilty of contributory negligence, and that all of appellees' allegations, except that which alleged discovered peril, should have been stricken out. We are not prepared to say that the court erred in overruling appellant's exceptions in this regard, inasmuch as the facts alleged might show that the deceased was a licensee. However, the facts proven clearly show that he was a trespasser, and while our system of pleading (which in the opinion of the writer is clearly wrong) permits a party to plead any facts which he may choose, provided, if true, they would show a cause of action, it would more certainly conduce to justice, as is exemplified in this case, if the parties would not allege any facts that they did not reasonably expect would be sustained by the evidence.

[2] 2. Appellant assigns as error the admission of the testimony of Frank Evart as to the distance in which the train which ran over the deceased could have been stopped. The ground of the objection is that the witness was not an expert as to such matters. Authorities may be found, and some are cited by appellant, which may be construed to sustain his contention; but we think that Evart showed himself competent to give his opinion in this matter. He was not an engineer, and knew nothing about the mechanism of an engine, and had never worked on a railroad; but he stated that he had been living at Milano, at the junction of the International & Great Northern Railroad and the Gulf, Colorado & Santa Fé Railway, in sight of both tracks, since 1886; that he had seen a great deal of switching in the yards of said companies; that he had been engaged in shipping hogs and vegetables and had observed cars moving on the tracks, and had noted the length of time required to stop them, and had himself stopped them (we presume by giving signals for them to stop); and that he saw this train just before the deceased was killed and observed the speed with which it was traveling, and he knew from his experience and observation in this matter that this train could have been stopped within 20 feet. His evidence upon this point is not seriously disputed, but is corroborated by the engineer. The train was moving at the rate of from three to six miles an hour. We think a man with such opportunities for observation, and such observations actually made as shown by this witness, would be competent to testify as to within what distance a train, moving as this train was, could be stopped.

[3] 3. Appellant assigns error upon the admission of the testimony of the witness Ben Cammer as to experiments made by him to determine at what distance in front of a car a person could be seen on the track by one who was situated as was the brakeman Aiken in this case. The objection is that the experiment was not made under similar circumstances. The evidence on this point is that the witness got upon a freight car, similar to the one upon which the brakeman was, and in a similar position, and upon a track straight and level, as the evidence showed this track to be, and that he could see a man from 21 to 23 yards, and as much farther as the eyesight would reach. We think the circumstances under which the test was made were sufficiently similar to those in which the brakeman Aiken was to admit of this testimony. It is not probable that any harm was done by this testimony, as this was the second trial of this case, and the brakeman Aiken could have conducted an experiment, had he desired, on the track at Milano. He testified that he had not made any such experiment.

[4] 4. The court did not err in permitting T. C. Stafford, an insurance agent, to testify from the mortality tables as to the expectancy of the deceased. The deceased was about 33 years of age when he was killed, and the evidence of this witness showed that he practically had an expectancy of life of 34 years. Appellant insists that this testimony should not have been admitted for the reason that the evidence shows that plaintiffs are about 6 and 7 years of age, respec-

tively, and that they had no legal right to expect pecuniary aid from their father after arriving at their majority. They may or may not have been in a position after this time to expect pecuniary assistance from their father; but it was material to prove that they had such expectancy during their minority, and, among other things, in order to establish such expectancy, it was proper to show that the deceased had a life expectancy at least for the term of their minority. Had appellant wished any instructions as to their expectancy after that time, and had it been proper for the court to have given such instructions, it would have been incumbent upon him to request a special charge on this phase of the case. This he did not do.

[5-7] 5. Appellant assigns error upon the admission of the testimony of the conductor Boggs upon cross-examination; he being required, over appellant's objection, to answer the following questions: "Now, Mr. Boggs, you know from your experience as a conductor and a railroad man that it is dangerous to back cars in a town, or in any place where people go, without using any precaution to prevent injuring them, don't you?" To which the witness answered: "Yes, sir." And also the following question: "Now, Mr. Boggs, it is a rule of the company—is it a rule, or is it not a rule, in backing into towns, into Milano, and in towns like that, and switching where people are walking and likely to be, to keep a brakeman at the rear end to prevent injuring them?" To which witness answered: "It is necessary where there is lots of people, anything like that. It isn't necessary, but we keep a man there on the hind end, and more, at these places, to see that the cars do not break off or run away, than we do to look out for people. As a general thing, we don't do that. One of the reasons, to be sure, is to prevent injuring people."

We do not agree with appellant that the answer to the first question called for the legal opinion or conclusion of the witness upon a mixed question of law and fact, as would have been the case had he been asked if it was not negligence to fail to keep a man on the lookout under such circumstances. It seems to us that an experienced conductor ought to know as a fact whether or not it is dangerous to back cars under the circumstances stated. It is true that the jury perhaps knew this fact, and did not need the aid of an expert to enlighten them on the subject; but, at any rate, such danger is a fact so obvious that proving it by a witness did not probably injure the defendant. We cannot say, however, that injury did not result from this character of testimony, in view of the fact that appellant was not under any obligation to take precautions to avoid such danger. The evidence in this case at the time this testimony was put in showed that the appellant was not under

legal obligation to the deceased to avoid such danger; and therefore, to say the least of it, it would not have worked any legal injury to the plaintiffs to have excluded this testimony. The hypothetical case put in the second question had not been proven; that it to say, "switching where people are walking and likely to be." The injury did not occur where people had any right to be walking, nor where they were likely to be. It occurred on that part of the track where the company was in the habit of switching its trains backwards and forwards in making them up, and such track was not commonly used by the public for the purpose of walking thereon. The evidence clearly indicates that the deceased had gone upon the track for the purpose of unlawfully riding upon appellant's freight train.

[8, 9] 6. Appellant's assignment of error as to the rejection of the testimony of Ed. S. English cannot be considered, for the reason that the bill of exception does not show upon what ground said testimony was objected to. Railway Co. v. James, 39 Tex. Civ. App. 408, 87 S. W. 730; Railway Co. v. Holzer, 127 S. W. 1062, and authorities there cited. In such case, if the court could properly have excluded the testimony upon any objection, this court will consider that such was the ground upon which the court acted. This question might have been objected to, as far as the record shows, upon the ground that it was leading. Appellees contend that it might have been objected to upon the ground that no predicate was laid by first questioning the witness Childs. This testimony was offered for the purpose of showing that Childs was not an impartial witness, but that he was biased in favor of the plaintiff. Such fact is always material. Whether or not it is necessary to lay a predicate by first questioning the witness as to the facts offered to be proven is a matter upon which the authorities are hopelessly at variance, and as the issue was not raised by the record, we do not decide this question.

[10] 7. Appellant complains of the refusal of the court to give special instruction "c," special instruction No. 2, and special charge No. 10. These charges were, in substance, that the defendant and his agents, servants, and employés in charge of the train, rested under no obligation to anticipate the presence of the deceased upon the track, for the reason that he was a trespasser, and that they were under no obligation to keep a lookout for him, or to place a man upon any particular part of the car in order to discover his presence, and that the jury should find for the defendant, unless it affirmatively appeared from a preponderance of the evidence that the presence of the deceased was actually discovered by defendant's agents, and that said agents realized, or that the circumstances were such that a person of ordinary prudence similarly situated, would have realized, that the deceased would not remove

himself from the track in time to avoid being struck, and that the servants of the defendant, if they discovered such peril, did not exercise ordinary care, by resort to the means and appliances then in their power, to check the train in time to avoid striking deceased, or take other measures to avoid injuring him. It is true that the court did not submit to the jury any other issue but that of discovered peril; still, we think that, in view of the fact that appellees had alleged negligence on the part of appellant in not properly operating the train, and in not keeping a proper lookout, and in not discovering the deceased upon the track, and introduced evidence in an attempt to establish these allegations, that the court should have specifically instructed the jury, in substance, as requested in these special charges.

[11] If this was a strong case upon the facts as to discovered peril, we do not know that we would feel called upon to reverse this case by reason of the errors in procedure above pointed out. We do not say that the jury might not have found discovered peril as they must have done in order to return a verdict for the appellees, had the errors above pointed out not been committed; but the evidence in that regard is so near the border line where the court might say, as matter of law, that there was not sufficient evidence to sustain the verdict, that we feel that this issue ought to be submitted to a jury, freed from all extraneous circumstances and matters which are liable to mislead them or to cause them to render a decision upon anything except the naked question of discovered peril.

The judgment of the trial court is reversed, and this cause remanded for a new trial.

Reversed and remanded.