FT. WORTH & D. C. RY. CO. v. YANTIS.
(No. 8347.)

(Court of Civil Appeals of Texas. Ft. Worth. March 18, 1916. Rehearing Denied April 22, 1916.)

1. TRIAL  251(8)—INSTRUCTIONS—ISSUES.

In a passenger's action for injuries alleged to have been received when he stepped upon a banana peel on the sill of the car and fell to the platform, and thence to the ground, while attempting to leave the car, at a regular stop, at a door left unlocked, an instruction, permitting recovery independent of the presence of the banana peel, is erroneous, negligence of the carrier not being shown by the mere implied invitation to passengers to alight from the door, but depending on the presence of the banana peel.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 593; Dec. Dig.  251(8).]

2. CARRIERS  303(8)—INJURIES TO PASSENGERS—DUTIES OF CARRIER.

The carrier has a right to assume that an able-bodied male passenger will exercise that degree of care required of him for his own safety, and will be able to alight safely without assistance from a car, the highest step of which is 18 inches from the ground, the platform, sills, and steps being dry, and the train not being in motion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1232; Dec. Dig.  303(8).]

3. CARRIERS  303(8)—INJURIES TO PASSENGERS—DUTIES OF CARRIER.

It is only the duty of the carrier to furnish safe appliances and facilities for alighting from its train and give passengers a reasonable time within which to alight, upon arrival at their destination, but it is not burdened ordinarily with the duty of extending personal assistance to a passenger in alighting.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1232; Dec. Dig.  303(8).]

4. CARRIERS  303(8)—INJURIES TO PASSENGERS—DUTIES OF CARRIER.

Where a passenger is burdened with baggage or other impediments, or is blind, sick, aged, young, crippled, or infirm, which condition is known to the carrier, or there is a defect in the car or steps, the obligation to render personal assistance in alighting from the car may arise.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1232; Dec. Dig.  303(8).]

5. CARRIERS  305(5)—INJURIES TO PASSENGERS—PROXIMATE CAUSE.

The mere fact that a door was left unlocked, and no attendant provided to assist passengers from alighting from a car, did not contribute to or cause the fall of a passenger, who stepped on a banana peeling and fell to the ground, and such result from leaving the door unlocked could not have been reasonably contemplated and was not, in a legal sense, a proximate cause of the injuries.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1136–1139, 1245; Dec. Dig.  305(5).]

6. TRIAL  141—QUESTION FOR COURT—SUBMISSION TO JURY.

To submit undisputed facts as independent grounds of recovery is to submit a question of law which is always for the court's determination, and is therefore erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig.  141.]

7. APPEAL AND ERROR  1170(9)—REVERSAL—IMMATERIAL ERROR.

Error in submitting recovery in passenger's action for injuries independent of the presence of a banana peel, upon which he slipped and which caused his injury, cannot be disregarded under rule 62a, providing that no judgment shall be reversed on appeal on account of error, unless such error probably caused the rendition of an improper judgment, since such error might well have affected the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4543; Dec. Dig.  1170(9).]

8. WITNESSES  379(12) — CREDIBILITY — HEARSAY EVIDENCE.

Evidence that a witness, who testified to the presence of a banana peeling on a car sill for some time prior to plaintiff's accident, had been present at a consultation, where another witness said that he saw plaintiff throw the banana peel on the floor and then slip on it and fall, and that the first witness did not mention the fact that he had seen the peel there some time previous, cannot be excluded, as hearsay or irrelevant or immaterial, as it goes to the credibility of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1222; Dec. Dig.  379(12).]

9. TRIAL  140(1) — WITNESSES  331½ — CREDIBILITY—QUESTION FOR JURY.

The credibility of a witness is always a question for the jury's determination, and any evidence tending to affect it is relevant and competent, and hearsay evidence affecting credibility is admissible, if otherwise competent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 334; Dec. Dig.  140(1); Witnesses, Dec. Dig.  331½.]

10. WITNESSES  379(12)—ADMISSIBILITY—HEARSAY EVIDENCE—CREDIBILITY OF WITNESS.

If a witness is present and, though under no duty to speak, the facts discussed were of such a nature and the circumstances such that he would, in the natural order of things, have mentioned facts within his knowledge, his failure to do so bears sufficiently on the question of his veracity to entitle it to his admission.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1222, 1248; Dec. Dig.  379(12).]

11. WITNESSES  268(1) — CROSS-EXAMINATION—SCOPE.

Great latitude is allowed in cross-examination of witnesses, and the admissibility of such examination is not to be determined by its weight or probative force, but by its competency.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931, 938, 939; Dec. Dig.  268(1).]

12. EVIDENCE  150 — ADMISSIBILITY — EXPERIMENTS.

Where a passenger claimed damages for injuries received when he slipped on a banana peel on a car sill when alighting from defendant's train, evidence that a witness took a banana peel and placed it on the sill of the same car, stepped on it, and slid it across the platform, and that the stain remained visible for 20 hours, is admissible, though made out of court and presence of the jury, and in spite of the fact that the weather conditions might not have been identical, only a substantial conformity with the facts alleged being necessary.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 439; Dec. Dig.  150.]

---

 For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. TRIAL ☜251(8) — INJURIES TO PASSENGERS — ACTIONS — QUESTIONS FOR JURY — IMMATERIAL ISSUES.**

Where a passenger alleged that he slipped on a banana peel on the floor at the door and fell, receiving injuries, submission of the issue whether leaving that particular door unlocked, though another door was open, was an implied invitation to the passenger to leave the car at that door was error; that being immaterial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 593; Dec. Dig. ☜251(8).]

**14. APPEAL AND ERROR ☜843(1)—SCOPE OF REVIEW—MATTERS NOT NECESSARY TO DECISION.**

Where reversal is necessitated by other errors, the court on appeal need not consider alleged error in giving undue emphasis to a certain issue, which can easily be remedied on the new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3335, 3337–3341; Dec. Dig. ☜843(1).]

**15. CARRIERS ☜333(4)—INJURIES TO PASSENGERS — ACTIONS — DEFENSES — CONTRIBUTORY NEGLIGENCE.**

Alleged contributory negligence of a passenger cannot be predicated upon his act in leaving the car at a door where there was no attendant when the door was left unlocked, although there was another door, which was open, at which an attendant was stationed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1389, 1390; Dec. Dig. ☜333(4).]

**16. CARRIERS ☜348(6)—PASSENGERS—DUTY OF CARRIER—CONTRIBUTORY NEGLIGENCE.**

A charge, in a passenger's action for injuries alleged to have been received when he stepped on a banana peel on the car sill and fell to the platform, that the passenger could rely on the carrier keeping its floor, doorsill, and platform free and clear of banana peeling and other slippery substance is erroneous, as relieving the passenger from his obligation to watch out for his own safety, since, though plaintiff is not required, under the law, to inspect the doorsill or platform for defects or obstructions, he must exercise ordinary care for his own safety.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403, 1405; Dec. Dig. ☜348(6).]

**17. CARRIERS ☜347(9)—INJURIES TO PASSENGERS—EVIDENCE—SUFFICIENCY.**

Evidence, in a passenger's action for injuries received when he stepped upon a banana peel and fell to the ground, *held* sufficient to authorize submission of the issue of the carrier's negligence in permitting the banana peel to remain upon the doorsill.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1385, 1402; Dec. Dig. ☜347(9).]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Action by G. R. Yantis against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Carrigan, Montgomery & Britain, of Wichita Falls, and Thompson & Barwise and G. W. Wharton, all of Ft. Worth, for appellant. A. A. Hughes, T. R. Boone, and Fitzgerald & Cox, all of Wichita Falls, and H. F. Weldon, of Bowie, for appellee.

CONNER, C. J. On February 6, 1914, the appellee, Dr. Yantis, took an early morning train out of Wichita Falls, Wichita county, where he resided, to Electra, in the same county, over appellant's line of railway. He returned from Electra to Wichita Falls in the evening, about 4 or 5 o'clock. The train upon which he was a passenger on the return was designated in the evidence as a "plug" passenger train, consisting of an engine, baggage car, and two passenger coaches. The baggage car on the return trip was attached to the engine, and next to the baggage car was coach 66, and the next was coach 62, which constituted the rear car of the train. Coach 66 was divided into two compartments, one for colored passengers and the other for white. The negro compartment was located in the front or south end of the car as it journeyed toward Wichita Falls, and on this trip was unoccupied save by the conductor and the newsboy on the train. Dr. Yantis, a Mr. Lyne, a Mr. Deering, and Mr. Jones, one of appellant's claim agents, were all occupants of the northern, or white, compartment of the car. The evidence fails to show that there were any ladies or children in this car. When the train reached Wichita Falls and had been stopped at its regular place at the station, Yantis and Lyne and others left their seats and proceeded south through the compartment they were in and into and through the south, or negro, compartment, and on out and on to the platform at the south end of the car. Very shortly preceding this, however, the conductor had gone out at the south end of the car and dropped off the train a few yards before it stopped, for the purpose of getting orders. The brakeman, when the train stopped, proceeded north out of the white compartment of car 66, left the north door open, opened the south door of the rear car, and got upon the ground with the stool to assist passengers to alight. No one was stationed at the door, or at the steps, or upon the platform at the south end of car 66. Jones, the claim agent above named, preceded Yantis, and Lyne was immediately behind Yantis. Jones passed on over the platform, down the steps, and upon the depot platform, which was paved with brick. Yantis, as he alleged and testified, slipped just as he was passing through, or just after he had passed through, the door of the car, and fell on the platform, and from the platform he fell down the steps and on the brick pavement upon his head, and received thereby, as alleged, serious injuries. Lyne testified to the effect that Yantis slipped upon a banana peel, which he (Lyne) kicked out of the way. The Mr. Deering named testified to the effect that some time before the train had arrived at Wichita Falls, he visited the south end of the car for the purpose of getting a drink, and in standing at the door noticed a banana peel upon the outer sill of the door, or immediately adjoining the sill;

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that he did not see the banana peel when Dr. Yantis fell, but noticed a smeared place upon the platform or matting in front of the door; that the smeared place was an inch or more wide and several inches long, and was plainly visible. The day was cool or cold. There were no defects or deficiencies of any character in the car or depot platforms, and the car was standing perfectly still at the time Dr. Yantis proceeded from the car. Jones, the claim agent, had just got down from the car and stepped on the depot platform when Yantis fell, and he testified that he proceeded at once to make an examination to determine the cause of the fall, and made a thorough search for anything and everything that could have brought it about. He testified that he failed to find the banana peel, or anything else, upon the platform or in the vestibule of the car, or upon the ground about, nor did he find any smeared place upon the platform of the car. Some seven passengers, who were standing at that end of car 66 with a view of taking passage thereon in its further journey toward Ft. Worth, also testified to the effect that they, too, had made an examination of the platform vestibule and grounds, and had failed to find a banana peel, or other thing that could have caused the fall, and also failed to find any evidence of a "smeared" place, as mentioned by Deering. In the resultant suit by Dr. Yantis for the recovery of damages because of his fall, he alleged that the appellant company was guilty of negligence in leaving the south door of car 66 open, thus inviting him and other passengers to go out thereat, and in failing to have an attendant at such door for the purpose of aiding and assisting passengers to alight, and in failing to keep its platform and steps clear of banana peels and other obstruction rendering them unsafe, and in failing to have an attendant at the steps of the car with a stool to aid alighting passengers. The defendant pleaded the general denial, and further pleaded that Dr. Yantis was guilty of contributory negligence in the manner of his exit and fall. The case was tried before a jury, and resulted in a verdict and judgment in the plaintiff's favor for $20,000, and the defendant has appealed.

The court, after defining the character of care required of appellant for the safety of its passengers, further instructed the jury in its second paragraph as follows:

"Now if you find from a preponderance of the evidence in this case that, on the 6th day of February, A. D. 1914, the plaintiff was a passenger on one of the defendant's trains; and if you further find and believe that when said train arrived in Wichita Falls, the plaintiff attempted to alight from the coach in which he was traveling, and while passing out of said coach door and onto the platform or vestibule of said coach, he stepped upon a banana peel, lying on the floor of said coach or platform or the sill thereof, and thereby slipped and fell to the brick pavement and thereby received the injuries charged in the plaintiff's petition, and that the plaintiff was thereby injured and damaged; and if you further find and believe from the evidence that said banana peel was on the floor of the coach or platform of said car, or on the doorsill thereof, and that said banana peel was permitted to be on the floor of the coach or platform of said car, or on the doorsill thereof, by the agents, servants, or employés of defendant company; and if you further believe that the agents, servants, or employés of defendant company in charge of its trains were guilty of negligence in so permitting said banana peeling to be and remain on the said floor of said coach or platform of said car, or on the sill thereof, that is, if they did so permit it, or if you find and believe from the evidence that the door of the coach where plaintiff attempted to alight from said coach was open, and that there was no attendant at said door; and if you further find and believe from the evidence that it was necessary for the safety of defendant's passengers having said door open, that is, if it was open, to have had an attendant at said door; and if you further find and believe from the evidence that the defendant company was guilty of negligence in having or leaving said door open, if it was open, and in failing to have an attendant at said door with a step stool in order to assist passengers to alight from said coach, that is, if said door was open, and if it did fail to have an attendant at said door; and if you further find and believe from the evidence that such' acts of negligence, if any, were the direct and proximate cause of the plaintiff's injury, if any—then in either event, if you so believe, you will find for the plaintiff such an amount as damages as you may find from the evidence he is entitled to, unless you should find for the defendant under other instructions hereinafter given you."

[1-3] The defendant objected to the charge below, and here insists that it is erroneous, in that the evidence did not authorize the submission of the second ground of liability presented in the charge, and to our minds it is plain that the objection must be sustained. In considering the question thus presented, it is to be observed that the issue of the presence of the banana peel upon the platform was submitted distinctly in the preceding part of the charge, and that the objectionable part of the charge authorized the jury to find for the plaintiff, regardless of the issue of whether there was a banana peel on the doorsill or upon the platform of the car, if they found that the door was open, that there was no attendant there or at the steps below, and that such failures constituted negligence. As stated, the depot platform, the car platform, steps, and other portions of the car, aside from the banana peel, if any, were without defect and dry, and no one was in car 66 except adult males, Dr. Yantis, as the testimony shows, being some 35 years old, and at the time in his normal state of health. It was further shown that on trains of the character involved, it was customary to have but one attendant at the foot of the car steps to assist such passengers as might be in need of assistance, and that the attendant provided for the train in question was at his proper place. Appellee has cited a number of cases where it has been held that it was proper to submit for the jury's determination the question of whether, under given circumstances, a railway company was guilty of negligence in

failing to have an attendant to aid and assist passengers in alighting from or boarding its cars. For instance, it was so held in the case of San Antonio Traction Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200, but there the injured party was a woman, and it was shown that the steps of the car were muddy and slippery. In the case of M., K. & T. Ry. Co. v. Buchanan, 31 Tex. Civ. App. 209, 72 S. W. 96, the injured party was a woman accompanied by a child, and when she entered the train she requested the conductor to assist her and her child in alighting, and advised him that she had a large valise and bundle with her. Before the train arrived at her destination she requested the conductor to have the porter take her valise out, and after waiting for the porter, who did not come, she left her seat, holding the valise and bundle behind her in one hand and directing her child in front with the other. When leaving the step of the car she felt her way down with her foot and fell. Under such circumstances it was held the jury were warranted in finding that the defendant was negligent in not assisting her to alight. But we know of no case which goes so far as to hold that where the passenger is an adult male, in full health, and the platform, car, and steps are clear of obstructions and without defect, and where, as shown in this case, the distance from the lower step of the car to the depot platform is but 18 inches, that it is incumbent upon the carrier of passengers to have an attendant to assist him in alighting. As it seems to us, under such circumstances, the carrier has the right to assume that the passenger will exercise that degree of care required of him for his own safety, and that a passenger of the character indicated, so acting, will be able to safely alight without assistance. As stated in the case of M., K. & T. R. Co. v. Buchanan, supra, by the Court of Appeals for the Third District:

"The general rule is, as insisted upon by the appellant, to the effect that it is only the duty of the carrier to furnish safe appliances and facilities for alighting from its train, and give passengers a reasonable time within which to alight upon arrival at their destination, and that ordinarily the carrier is not burdened with the duty of extending personal assistance to a passenger in alighting from and leaving the train."

This general rule, of course, is made to yield in this state, where the special circumstances shown would indicate the necessity to assist the passenger. The editors of Ruling Case Law, vol. 4, bottom page 1234, § 64, thus state the law:

"While there are cases that seem to hold as a matter of law that no duty rests upon carriers of passengers by rail to assist persons entering or getting off the cars, the usual rule is that, though it is generally not the duty of the carrier's employés to assist passengers to board or alight from its vehicles, such duty may, and frequently does, arise, the obligation of a carrier in this respect depending largely upon the nature of his vehicle and facility with which access may be had without assistance, and similar circumstances, and that the question is one for the determination of the jury upon a consideration of all the circumstances in the particular case. * * * Accordingly, it has been often held that where the passenger is blind, sick, aged, very young, crippled, or infirm, and his condition is apparent or made known to the carrier, it is bound to render him the necessary assistance in boarding or alighting from its trains or cars. The fact that a passenger is incumbered with heavy baggage, or other impediments, are apparently held by some authorities to entitle him to assistance. On the other hand, no duty to render assistance will devolve upon the carrier where the passenger is in possession of his faculties, of good health, and able to move about alone, and there is nothing defective about the car platform or steps, and the place of stopping presents no special difficulties to those entering or leaving the car."

[4, 5] Many authorities are cited in support of the text quoted, and we think the doctrine as thus stated correct, and its application to the circumstances of the present case demonstrates the inapplicability and error of the objectionable part of the charge under consideration. Moreover, the mere failure to leave the door open, or to have an attendant at the door, or at the steps of the car, considered wholly apart from the issue of whether there was a banana peel on the sill of the door or platform and as a distinct and independent ground of recovery, in no way that we can apprehend contributed to or caused the result, to wit, appellee's fall. Such a result from such failures alone could not have been reasonably contemplated by appellant or its employés in charge, and therefore could not have been, in a legal sense, a proximate cause of the plaintiff's injuries, and should have been so determined by the court without submission to the jury. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Neely v. F. W. & R. G. Ry. Co., 96 Tex. 274, 72 S. W. 159.

[6] To submit these facts as independent grounds of recovery was but to submit a question of law, for the facts in the particulars mentioned were undisputed, and the only question that could arise under the circumstances was whether, as a matter of law, such undisputed failures could constitute actionable negligence. Questions of law are always for the court's determination, the function of the jury being to decide controverted questions of fact alone. The fact that the car door was left open, thus inviting an exit at this place, and that there was no attendant at the door, nor at the carsteps, are not issues of themselves. They are merely evidentiary in character. They are mere circumstances relevant to the issue of whether appellant's servants were guilty of negligence in failing to discover and remove the banana peel, if any such there was, from the sill or platform, and that issue was comprehended within the first clause of the charge quoted.

[7] But appellee insists that the error should be regarded as harmless under the operation of rule 62a (149 S. W. x). This

rule, so far as here applicable, provides that:

"No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case," etc.

We could, and would, have no hesitation in applying this rule if it could be said, as a matter of law, that the verdict and judgment should be sustained on the issue of appellant's negligence in a failure to furnish appellee with a means of exit from the car free from fault or obstruction. See Western Union Tel. Co. v. Cobb, 103 Tex. 183, 125 S. W. 311. But we cannot so say. The questions of whether there was a banana peel upon the step or platform, and, if so, whether appellant was guilty of negligence in this respect, were sharply contested in the evidence, and the very fact that the court submitted as a distinct ground of recovery the issue of negligence in leaving the door open and in failing to have an attendant thereat may have been construed by the jury as an indication that in the mind of the court a recovery upon this ground of negligence alone was authorized under the law. A conclusion to this effect would, under the circumstances of this case, have afforded the jury an easy solution of the difficulty of determining the issues of negligence relating to the banana peel. In the case of S. W. Tel. & Tel. Co. v. Sanders (Sup.) 173 S. W. 865, it was expressly held by our Supreme Court that an instruction, submitting an issue of negligence not raised by the evidence, was not only erroneous, but also prejudicial. The rule invoked became effective on the 15th day of November, 1912, while the decision of the Supreme Court referred to was rendered on February 24, 1915, and we cannot assume that at the time of the decision the court overlooked rule 62a. On the whole, therefore, we conclude that the rule should not be applied here, and that the error in the charge discussed requires a reversal of the judgment.

[8-10] Appellant's assignments of error also require of us an examination of several of the court's rulings in excluding evidence. Upon the material issue of appellant's alleged negligence, it was, of course, competent to show that the banana peel, upon which it was alleged appellee fell, had been upon the sill or platform of the car for such length of time as would afford an inference of negligence on the part of appellant's employés in failing to discover and remove it, and to this end appellee's witness J. J. Deering, as stated in our general statement of the case, testified that he saw the banana peel on the sill or platform some time before the arrival of the train at Wichita Falls, and prior to the time the conductor went out at the south end of the car. The witness Deering was the only witness who testified to this fact, and on the issue of his credibility appellant was permitted to show, and did show, on his cross-examination that he also had a suit for damages pending against the appellant for $25,000, wherein he alleged that on August 23, 1911, he was a passenger on one of appellant's trains from Electra to Wichita Falls, Tex., and that when the train arrived at Wichita Falls he (Deering) stepped upon a banana peel, receiving injuries which were serious and permanent. He also admitted on cross-examination that he had brought suit against an insurance company growing out of the injury to him referred to upon an insurance policy, which in terms entitled him to indemnity for injuries sustained on a railroad. In this condition of the evidence appellant offered to prove that at a designated date previous to the trial, the witness Deering had visited the office of Messrs. Garnett & Garnett, railroad lawyers of Gainesville, Tex., and then and there had a conversation relating to the case in question. Appellant sought to show that in this conversation with the Garnetts, he stated, substantially, that a man by the name of Wilson had stated to him (Deering) that he was on the train from which Yantis fell, and that Wilson said that he saw Yantis throw the banana peel on the floor, slip thereon and fall, and that, notwithstanding this statement, he (Deering) did not mention the fact that he, himself, had, at any time, been on the train, or at any time had seen the banana peel upon the sill of the door, or upon the platform of the car. This testimony was objected to on the part of appellee as hearsay, irrelevant, and wholly immaterial, and the objection was sustained. We think the ruling was erroneous. The credibility of a witness is, under our statute, always a question for the jury's determination, and any evidence which tends to affect his credibility is relevant and competent. Jones v. McCoy, 3 Tex. 349; Evansich v. G., C. & S. F. Ry. Co., 61 Tex. 24; G., H. & S. A. Ry. Co. v. Jackson, 53 S. W. 81; Id., 93 Tex. 262, 54 S. W. 1023. And in the case last cited it was expressly held that on the issue of a witness' credibility, an objection that the testimony was "hearsay" was not available, if the testimony was otherwise competent. See, also, 1 Jones on Evidence, § 138, p. 686; 5 Jones on Evidence, § 828, p. 140; 10 R. C. L. p. 1000, § 187; G., C. & S. F. Ry. Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068. From the case last mentioned we make the following quotation that is deemed particularly pertinent here:

"Evidence, therefore, which bears upon the story of a witness with sufficient directness and force to give appreciable value in determining whether or not that story is true cannot be said to be addressed to an irrelevant or collateral issue. It is directed to the issue as to the existence of the material facts to which the witness has testified. The evidence that a witness has kept silent concerning material facts is often as relevant, and sometimes as strong, as an af-

firmative statement contradictory of his testimony would be. The relevancy of evidence of this character, therefore, is not tested by the rule applied by the Court of Civil Appeals, but by its probative force or value. That may be so slight as to make the fact offered irrelevant in the legal sense, and when this is true the circumstances should be excluded as too remote. It is a very common thing in the trial of cases to show that a witness, testifying to some fact, has never before disclosed his knowledge, or that he has failed to do so on some particular occasion. The value of such a fact depends upon the strength of the presumption or expectation that the witness would have disclosed his knowledge had he possessed it. When it is shown that he was silent when it was his duty to speak, his omission may have great effect in weighing his testimony. So if it can be made to appear that, while there was no duty to speak, the fact was of such a nature or the circumstances such that one situated as the witness was would, in the natural order of things, have mentioned the fact if within his knowledge, his failure to do so bears sufficiently upon the question of his veracity to entitle it to admission. State v. McKinney, 31 Kan. 570 [3 Pac. 356]; Alabama G. S. R. Co. v. Brooks, 135 Ala. 401 [33 South. 181]; State v. Martin, 107 N. C. 904 [12 S. E. 194]; State v. Burton, 94 N. C. 947; State v. McQueen, 46 N. C. 177.

"Many authorities upon the subject are cited in the Encyclopedia of Evidence, by Camp & Crowe, vol. 7, pp. 152–155. They are generally cases in which witnesses testifying to facts are shown to have omitted to disclose them on some particular occasion when disclosure was naturally called for by the circumstances, and in some of them such evidence was rejected because the occasion did not appear to have called for any statement."

[11] Great latitude is allowed in cross-examination of witnesses (Evansich v. G., C. & S. F. Ry. Co., supra; O'Connell v. Storey, 105 S. W. 1174), and, as we conclude, the statement of Wilson as voiced by the witness Deering should have been permitted to go before the jury. Appellee waived any objection to proof of the fact that the witness Deering conversed with the Garnetts about the case we have under consideration, and that in such conversation Deering made no mention of the fact, if so it was, that he was upon the train when Dr. Yantis was injured, or that he saw the banana peel involved in the controversy prior to the time of the arrival of the train at Wichita Falls, but as it seems to us the failure of the witness to so mention his connection with Dr. Yantis' case is wholly robbed of weight or significance, in the absence of the accompanying statement that Deering put in the mouth of Wilson. Had appellant been able to prove, and offered to prove, that any one or more persons other than Deering were present at the time of the conversation with the Garnetts, and that they then and there, in the presence of Deering, made any statement which in its nature was calculated to evoke a declaration on Deering's part of what he knew with reference to the banana peel, it would certainly be admissible under the foregoing authorities, regardless of the question of whether the statements made by such other persons were hearsay, and the fact that Deering, himself, voiced the Wilson declaration is entitled to no weight as against appellant. It is the fact of the statement and of its character, and of the witness Deering's failure to divulge his knowledge, considered as a whole, that becomes material or of appreciable weight. As it seems to us it was for the jury to say whether, in the light of this statement, a natural course of conduct on Deering's part would have been to have disclosed his own knowledge, if he had any on the subject. Of course, the fact, or purported fact, embodied in the Wilson statement as given by Deering, was not proven by the statement itself, and the statement could, and should, be so limited by the court in his charge. It may be true, also, that the failure of Deering to mention his knowledge, if any, in the conversation referred to would have no great weight as affecting his credibility as a witness, but if the failure under the circumstances was competent on this issue, its admissibility is not to be determined by its weight or probative force. 1 Jones on Evidence, § 135, page 686, quoting Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288, 37 L. Ed. 118.

[12] Appellant also, for the purpose of identifying and exhibiting the rubber mat and a stain thereon to the jury, offered to prove by its witness Hickman that he had gone to coach 66, from which appellee fell, placed a banana peel with the inside down upon the outer sill of the car door, stepped upon it with the weight of his body, permitted it to slip off upon the rubber door mat, pushed it along, making a smeared place upon the mat, and that the smeared place was yet visible for a distance of 50 feet, although the experiment had been made some 18 to 20 hours previous. This was objected to:

(1) "Because the same was demonstrative evidence, and for that reason was not admissible. (2) Because the same is immaterial, irrelevant and inadmissible and prejudicial for the following reasons: Because the conditions and circumstances are so uncertain and different under which the demonstration was made from that which existed at the time of the accident, and because from the nature of the demonstration is bound to be uncertain and indefinite, owing to the nature of the case, different banana peels at different times, and stepped upon by different kinds of rubber mats, would make such different impressions that the evidence now offered would be uncertain and confusing and prejudicial. And, further, that the conditions which existed at the time of the accident and which existed at the time of the demonstration were so different in so many different ways that same would tend to confuse and mislead the jury."

As stated, there was evidence tending to show that the experiment was made upon the same coach from which appellee fell, at the same door out of which he proceeded; that the platform, matting, and other conditions of the car were substantially the same as upon the occasion of appellee's fall. Aside from the fact that it does not appear that the weather conditions were precisely the same (and the witness gave it as his opinion that a difference in the weather

conditions would not make any appreciable difference in the character of duration of the stain), it appears apparently, at least, that the experiment was made under conditions substantially similar to those existing at the time of appellee's fall, and the fact developed, upon cross-examination of the witness, that after appellee's fall the stain then made, if any, may have been stepped upon by different persons of different weights, and with different sized shoes, etc., as it seems to us goes rather to the weight of the testimony than to its admissibility. It certainly cannot be said to be irrelevant and immaterial. Deering testified that the appellee's step upon the banana peel left a very distinct stain upon the doorsill and matting. Other witnesses introduced in behalf of appellant testified to the effect that they, almost immediately after the accident, made an examination, and failed to discover any banana peel or stain, and the experiment evidently was offered as a circumstance tending to corroborate appellant's theory that in fact no banana peel was on the doorsill at the time appellee fell. Jones in his Commentaries on Evidence, vol. 3, § 410, p. 56, says, so far as applicable here, that:

"There are numerous precedents for allowing experiments made out of court and not in the presence of the jury to be proved for the purpose of illustrating the testimony given in court; for example, experts have been allowed to state their experiments made out of court. Testimony has been received as to the results of shooting with the weapon in question, and also as to experiments made out of court in railway damage cases, where it is shown that the conditions are the same, and where they do not relate to some collateral matter. Other illustrations might be given, but it is obvious that testimony ought to be received as to experiments of this character, unless the testimony shows that they were made under such conditions as to fairly illustrate the point in issue."

In the case of K. C., M. & O. Ry. Co. of Texas v. Hall, 152 S. W. 445, an experiment with a lantern upon a dark night was held by this court to be admissible. It was there said, in an opinion written by Mr. Justice Dunklin, in relation to the evidence of the experiment under consideration, that:

"While the atmospheric conditions on the night the experiments were made are not shown to have been the same as on the night of the accident, in that it was not misting rain, we think the conditions were so nearly the same as to make the testimony admissible. It could not be expected that the conditions were in every respect identical, in order to make the testimony of such experiments admissible, and the rule does not require such a showing; the only requirement being that the conditions and circumstances accompanying the experiment should be substantially similar."

And our Court of Criminal Appeals, in an opinion by Davidson, the presiding judge, in Morton v. State, 71 S. W. 281, in stating the rule relating to similarity of conditions, says:

"The requirement of this rule is that there shall be similar, or nearly similar, circumstances and conditions in order to admit this character of evidence; and it does not exact more than what is denominated 'substantial' or 'reasonable' similarity, and this means such a degree of similarity as that evidence of the experiments will accomplish the desideratum of assisting the jury to intelligently consider the issue of fact presented in regard to this matter."

See also, Freeman v. Moreman, 146 S. W. 1045; Krueger v. Brenham Furniture Mfg. Co., 38 Tex. Civ. App. 398, 85 S. W. 1156. We are of the opinion that the court erred in excluding the testimony discussed.

[13] A number of other questions are presented by assignments of error, which we think may be briefly disposed of. As it seems to us, the issue, made in the pleadings and submitted in the charge of the court, of whether by leaving the south door of passenger coach 66 unlocked, and the north door open appellant extended an invitation to appellee and others to go out at the south door is immaterial. It is undisputed that the door was left unlocked; that the conductor went out of that door and left it unlocked with the evident view that passengers might disembark at that door, and, as stated the issue of negligence in this respect, as it seems to us, could, in no view of the case, be material or the proximate cause of the injuries complained of. Appellant's objections, therefore, to the submission of the issue, as complained of in the eighth assignment of error, should have been sustained.

[14] Appellee's special charge No. 1, complained of in the ninth assignment of error and given by the court, is, perhaps, subject to the criticism that thereby the court gave emphasis to the issue therein presented, and which was also submitted in the court's general charge. This criticism, however, may be so easily remedied upon another trial that we do not deem it material to discuss it.

[15] The court also submitted the issue of appellee's contributory negligence in proceeding, as he did, to go out of the south door of the car, or in the manner and way in which he did go on to the platform, or in not looking and exercising proper care to see where he was stepping, etc. It seems clear that the issue of contributory negligence cannot be predicated upon the fact that appellee went out of the south door of the car, for, as stated before, it is undisputed that the door was left open, and nothing in the evidence can reasonably be construed as affording an inference of negligence from the fact that he proceeded in that way rather than in going to the north door. While the writer doubts it, the majority are of the opinion that it was proper to submit to the jury the question of whether, in proceeding as appellee did, he exercised ordinary care for his own safety and that the evidence raises that issue. If the issue is submitted again, the criticism of the present charge should be avoided, that is to say, the jury should be instructed that if they should find that the appellee was guilty of contributory negligence because of a failure on his part to exercise

ordinary care for his own safety, and such contributory negligence was a proximate cause of appellee's injuries, then they should find for the defendant "even though they believe from the evidence that defendant itself was guilty of negligence alleged." See I. & G. N. Ry. Co. v. Neff, 87 Tex. 303, 28 S. W. 283; Texas Traction Co. v. Wiley, 164 S. W. 1028; H. & T. C. Ry. Co. v. Burns, 41 Tex. Civ. App. 83, 90 S. W. 688.

[16] Paragraph 2a, given by the court in connection with its charge submitting the issue of contributory negligence, was to the effect that plaintiff "could rely upon defendant keeping its floor, doorsill, and platform on its car free and clear of banana peeling and other slippery substance," and it seems to us that the objection made to the charge that the plaintiff was thereby relieved from the obligation to watch out for his own safety was well taken. It is true that the plaintiff was not required, under the law, to inspect the doorsill or platform for defects or obstructions, but he was required to exercise ordinary care for his own safety, and if, in the exercise of such care, he would have discovered the obstruction made the basis of his recovery in this suit, and the jury should believe that he was guilty of negligence in this respect, and that such negligence was a proximate cause of his injury, it would constitute a defense to his action, notwithstanding the fact that under the law he was not burdened with any duty of inspection.

[17] The objection to paragraph 2 of the court's charge in submitting the issue of appellant's negligence relating to the banana peel, on the ground that the evidence did not authorize its submission, must be overruled. The assignments of error complaining of the verdict and judgment become immaterial in view of our conclusion that, for the errors already discussed, the judgment should be reversed, and the cause remanded.

Judgment reversed, and cause remanded.